IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald Lee Munns,                                           Case No. 3:07CV2507

            Plaintiff

            v.                                                     ORDER

CSX Transportation, Inc.,

            Defendant

This is a suit under the Federal Employers Liability Act [FELA], 45 U.S.C. § 51 *et seq.* and Locomotive Inspection Act [LIA], 49 U.S.C. § 20701 *et seq.*, in which several motions in limine are pending. This order states my rulings on those motions and reasons for those rulings. [1]

Plaintiff began working for the defendant CSX Transportation [CSX] in 1978. From the early 1990s until 2007 he was a conductor assigned to ride from defendant's Willard, Ohio, yard to Chicago.

He claims that he suffered permanently disabling back and related injuries while riding the defendant's locomotives, which often, according to him, had seats that were broken in various ways. His complaint also alleges that he often rode "on rough and defective track and was forced work on large, oversized ballast that did not meet the specifications of defendant."

---

[1] In an earlier decision I denied defendant's motion for summary judgment as to the FELA claims and with regard to his claim under the LIA relating to the failure to maintain locomotive seats in good repair. The defendant's motion was otherwise granted with regard to plaintiff's other LIA claims. *Munns v. CSX Transp., Inc.*, 579 F.Supp.2d 924 (N.D.Ohio 2008).

I first consider defendant's motions in limine, then the plaintiff's.

## I. Defendant's Motions in Limine

### A. To Exclude Reference to Plaintiff's Daughter's Medical Condition and Financial Status [Doc. 73].

Defendant contends that the jury should not learn that the defendant is responsible for the care of a disabled daughter who is a medicaid recipient. Plaintiff expresses no intention of informing the jury about those circumstances. He does, however, assert that he should be able to assert that he would have continued to work, but for his injury, until reaching full retirement age of sixty-six.

If defendant suggests that plaintiff has elected not to return to work so that he can stay at home, the plaintiff can respond by stating that he currently cares for a disabled daughter, but he would have preferred to remain employed to support her and himself. There would be no reason to go into further details.

This motion shall be granted conditionally: plaintiff shall not introduce evidence of the daughter's circumstances. If the defendant opens the door, he shall, at most, testify objectively and without elaboration as indicated herein.

### B. To Exclude Any Argument by Plaintiff That This Action is Plaintiff's Only Remedy [Doc. 72].

Following his injury, plaintiff has received Railroad Retirement Board disability benefits. This lawsuit is not, accordingly, his "only remedy." Plaintiff shall make no reference or allusion that in any way suggests that recovery in this case is his exclusive recourse. This includes statements such as his "'day in court' is 'it for him.'" Though approved in *Haischer v. CSX Transp.*, 848 A.2d 620 (Md. 2004), such statement, in my view, improperly and impermissibly suggests to the jurors that plaintiff's only recovery can occur here. Motion granted.

### C. To Exclude Causation Testimony of Plaintiff's Treating and/or Examining Physicians [Doc. 79].

Defendant seeks to bar testimony by three of plaintiff's treating medical providers: Jay Christoper Mariotti, D.C., Dr. Iman Abou-Chakra, and Dr. Jeffrey A. Harwood. The motion shall be denied.

### 1. Jay Christopher Mariotti, D.C.

Defendant contends that a chiropractic doctor cannot give *medical* opinion. I agree.

That does not mean, however, that a chiropractic doctor is precluded from giving an opinion as a chiropractor, and doing so to a reasonable degree of certainty within that profession. He has treated plaintiff since 1999 for back pain.

While Dr. Mariotti may not, as defendant contends, have an expert's understanding of the conditions in which plaintiff worked, that does not matter. He can testify about what the plaintiff told him about those conditions, and, provided a foundation otherwise is laid, can give his opinion as to a causal connection between trauma of the sort related to him by the plaintiff and the condition of his back.

Defendant's challenge to the admissibility of Mariotti's testimony goes to weight, not admissibility.

### 2. Dr. Jeffrey A. Harwood

Dr. Harwood is Board Certified in Family Medicine. He has treated plaintiff since 2006. He, too, appears to rely principally on the plaintiff's account of his working conditions in reaching his understanding of what is responsible for his back condition.

To the extent the plaintiff anticipates offering testimony by Dr. Harwood about his experiences with patients, such as truck drivers, whose seats differ from those described by the

3

plaintiff, that testimony is not admissible. What matters is the conditions encountered by plaintiff, not others in a different occupational field. Dr. Harwood can, at most, diagnose physical conditions and, if a foundation otherwise is laid, attribute a cause to those conditions.

Defendant's challenge to Dr. Harwood's testimony otherwise goes to weight, not admissibility.

### 3. Dr. Iman Abou-Chakra

Dr. Abou-Chakra has past experience as an orthopedic surgeon and presently practices pain medicine, physical medication and rehabilitation. His practice involves musculoskeletal treatment of the neck, back, shoulders, joints and knees. He has treated plaintiff since February, 2007, following referral from Dr. Harwood. Though, as with the other medical witnesses being offered by plaintiff, his understanding of the conditions plaintiff encountered while riding on defendant's locomotives derives from the plaintiff, that fact, along with defendant's other challenges to this doctor's testimony, goes to weight, not admissibility.

### D. To Preclude Evidence That CSX was Negligent Under the FELA: 1) With Respect to the Size of its Ballast [Doc. 104]; 2) for Slow-Ordering Track or Allowing Trains to Travel Over Slow-Ordered Track [Doc. 77]; and 3) for Failure to Install Additional or Different Seats [Doc. 75].

Defendant seeks to preclude recovery on plaintiff's theories as to the size of ballast which he had to walk on while working on the railroad, defendant's failure to install ergonomically better seats and defendant's permitting trains to travel over "slow-ordered" tracks. Each of these motions raises similar issues as to whether federal law preempts plaintiff's ability to assert such claims.

I find that it does, and that plaintiff shall not seek to recover on the basis of these contentions.[2]

### 1. Ballast

Plaintiff claims that CSX used "mainline" – i.e., larger – ballast in areas of the Willard yard and elsewhere where it could have used smaller "yard" ballast to support its track, provide drainage and fulfill the other functions for which ballast is employed. The gravamen of plaintiff's contention about unsuitable ballast appears to be that mainline ballast, being bigger, creates a more uneven surface, is more difficult to walk upon and creates more physical stress than the smaller yard ballast.

Under the Federal Railway Safety Act [FRSA], 49 U.S.C. § 20101 *et seq*., the Secretary of Transportation has adopted a regulation relating to ballast. 49 C.F.R. § 213.103. [3] Rejecting contentions similar to those made here by the plaintiff that the regulation does not preempt ballast-related FELA claims, the Sixth Circuit held in *Nickels v. Grand Trunk Western R.R., Inc*., --- F.3d

---

[2]I note that, though defendant styles its motions as motions in limine, they are, in practical effect, motions for judgment on the pleadings or summary judgment as to three of plaintiff's substantive claims. As such, defendant should more properly have filed them within the time limit for dispositive motions, rather than on the eve of trial.

[3]The regulation states:

> Unless it is otherwise structurally supported, all track shall be supported by material which will --
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103

----, ---- 2009 WL 691040, *6 (6th Cir.), that "[b]ecause 49 C.F.R. § 213.103 covers the issue of ballast size . . . [it] precludes the plaintiffs' FELA claims."

### 2. Slow-Ordering of Trains

Plaintiff claims that his back condition was caused, in part, by having to ride over "rough and defective" track. His proof of this contention will, apparently, include evidence that CSX often issued "slow orders" for portions of the track over which he traveled. As to those portions, plaintiff will contend that the ride was rougher, leading to the back condition that gives rise to this suit.

The Federal Railway Administration has issued "Track Safety Standards" relating to track maintenance, inspection and repair. Maximum allowable speeds are set under 49 C.F.R. § 213.9(a). If a segment of track does not meet the requirements, it is reclassified to the next lower classification for which it meets the requirements. 49 C.F.R. § 213.9(b).

Plaintiff contends that, pursuant to these regulations, track speeds were lowered from time to time for various portions of the track. Those segments would, he asserts, cause locomotives to ride more roughly. Making him work under such conditions gives rise to the "rough track" component of his lawsuit.

Plaintiff does not contend that defendant disregarded any of the requirements of the Track Safety Standards. He claims, rather, that "slow-ordered" track was rough-riding track, which resulted in his injuries.

In light of *Nickels*, the Track Safety Standards preempt plaintiff's FELA negligence claim. Indeed, the need for preemption with regard to these standards is even greater with regard to Track Safety Standards than with the rather generalized ballast requirements at issue in that case. Uniformity across state lines is essential for rail traffic to flow with a maximum of safety and

minimum of disruption due to track conditions. Plaintiff cannot, therefore, recover under the FELA on the basis that he was required to ride over slow-ordered track.

Defendant does not appear to dispute plaintiff's assertions that from time to time locomotives did not ride as smoothly as during other times and trips. I will permit plaintiff to present evidence that the smoothness of the ride varied because of track conditions. He cannot tie those conditions to the Track Safety Standards; he can, however, tell the jury what it was like to ride over rough track.

If the jury finds that CSX made the plaintiff ride on seats that were broken or otherwise in disrepair, it could also conclude that rough riding locomotives amplified the effect of having to sit on ill-maintained seats. Evidence of rough riding is relevant and material; seeking to recover for being required to ride on slow-ordered track is not, however, permissible.

Defendant's motion in limine shall, accordingly, be granted to the extent provided herein.

### 3. Different Seat Design

Plaintiff seeks to recover under the FELA on the basis that the seats on which he rode, even when in good repair, were often of a design that failed to accommodate well-known, according to his expert witness, ergonomic principles. Moving to preclude that effort in light of the FRSA's regulation relating to locomotive seats, 49 CFR § 229.119(a), defendant again argues regulatory preemption, contending that the FRSA covers seat components or occupies the field under the LIA with regard to locomotive seats. [4]

---

[4]The issue raised in this motion is not whether the LIA gives rise to a claim for failure to provide a particular kind of seat. That it does not was among the issues decided in my earlier opinion. *Munns*, *supra*, 579 F.Supp.2d 924, 933. The issue now is whether the FRSA seat regulation or provisions of the LIA preempt plaintiff's FELA claim that CSX negligently failed to install ergonomically sound locomotive seats.

The decision in *Nickels* appears to compel the conclusion that the FRSA preempts plaintiff's FELA claim relating to seat design. The regulation at issue, which simply states, "Cab seats shall be securely mounted and braced." 49 C.F.R. § 229.119(a), bears the same relation to individual safety as the ballast regulation at issue in *Nickels*. That regulation relates by its own terms to emplacement of ballast sufficient to support track in light of its anticipated load, restrain its movement while bearing such loads, enable drainage and maintain its crosslevel, alignment and surface. 49 C.F.R. § 213.103.

On its face, each regulation bears only an indirect relationship to the safety of individual workers. Both relate more generally to the safe operation of trains. Nonetheless, *Nickels* holds that the FRSA is preemptive as to claims of individual injury from using ballast in areas where railway employees will be walking. I am persuaded that, had the issue before me been before the *Nickels* court, it would have held that the FRSA preempts and thus precludes plaintiff's claim as to seats meeting the FRSA regulation's requirements.

In any event, plaintiff addresses his response principally to preemption under the FRSA, while largely disregarding preemption under the LIA. The Supreme Court has held that LIA preemption is broad in scope, extending "to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances," *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 (1926), and encompasses "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order to the [Secretary]." *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 402 (1936). Most simply put, a seat "is an integral or essential part of completed locomotive." *Id.*; *Oglesby v. Delaware & Hudson Ry. Co.,*

8

180 F.3d 458, 461 (2d Cir. 1999) ("[T]he relevant inquiry is not whether a label falls under the BIA but whether a cab seat does. That such a seat is within the scope of the BIA is obvious.").

I conclude, accordingly, that the LIA preempts plaintiff's FELA claim as to design defects, including his contentions about ergonomic unsuitability, regarding the seats on which he rode. [5]

### E. To Exclude Plaintiff's Expert Witness Tyler Kress, Ph.D. [Doc. 76].

Plaintiff anticipates calling an ergonomic expert to testify about the ergonomic inadequacies of locomotive seat design. In light of preclusion of plaintiff's FELA seat design claim, it would appear that this motion must be granted.

I will, however, hold my ruling in abeyance pending a revised proffer of testimony by this witness. If, despite my ruling herein, plaintiff still desires to offer testimony by Dr. Kress as to the ergonomic consequences of riding on broken or otherwise defective seats [as plaintiff shall describe], plaintiff shall submit a supplemental report to defense counsel no later than noon, Monday, March 30, 2009, and shall proffer Dr. Kress for a discovery deposition prior to his testimony. I will conduct voir dire as to any challenge as to his testimony prior to his being called to the stand.

### F. To Exclude Exclude Any Evidence or Reference to the History of or Congressional Intent Behind Enactment of the Federal Employers' Liability Act [Doc. 71].

I agree with defendant that it is neither necessary nor appropriate to hear evidence or argument from the parties regarding Congress' intent when enacting the FELA. *See Stillman v. Norfolk & Western Railway Co.*, 811 F.2d 834, 838 (4th Cir. 1987). This motion shall be granted.

---

[5] Though the FRSA and the LIA preempt plaintiff's "seat design" claim, he still can proceed, as previously stated, *Munns, supra*, 579 F.Supp.2d at 934-35, on his FELA claim based on his having to ride on broken seats, or seats otherwise in disrepair.

**G. To Exclude Testimony Based on Rumor and Speculation [Doc. 78].**

Likewise, I grant defendant's motion seeking to preclude plaintiff from referring to rumors regarding alleged: 1) unsafe conditions of locomotives, locomotive seats and/or track conditions; and 2) bullying, intimidation and/or discipline for reporting safety issues.

Evidence in the form of rumor and speculation is inadmissible, as it violates two evidentiary rules. First, testifying witnesses must possess personal knowledge. *See* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge as to that matter.").

Witnesses, therefore, cannot testify unless they have personal knowledge of the underlying facts. In other words, to testify that CSX's locomotives were unsafe, a witness would have to have personal knowledge that such alleged defective conditions actually existed. Because opinion evidence must be grounded in observation or other first-hand experience, this motion shall be granted. *See Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).

Similarly, testimony about rumors and other speculation heard from other unidentified sources is hearsay under Fed.R.Evid. 801(c). Witnesses may not simply regurgitate claims made by other individuals, especially when the witnesses are making such claims to assert the truth of the matter.

**H. Adverse Inference Instruction [Doc. 74].**

Plaintiff maintained diaries or "logbooks" in which he would record the conditions of the locomotives on which he rode. He no longer has those records. Those for years prior to 2000 were lost in a house fire. He discarded those for 2000-05. I accept his contention that he did so without bad faith, or in an effort to conceal those entries from CSX.

10

CSX wants me to give an adverse inference, or "missing witness" instruction as to the unavailability of plaintiff's for 2000 to 2005. I decline to do so.

Unlike the cases cited by CSX, there is no evidence of malfeasance or that Munns deliberately destroyed his time books. There is similarly no evidence that Munns acted with gross neglect. Ohio law, on which CSX relies, "requires a strong showing of malfeasance-or at least gross neglect-before approving such a charge." *Sullivan v. Gen. Motors Corp.*, 772 F.Supp. 358, 364 (N.D.Ohio 1991); *Roetenberger v. Christ Hosp.*, 163 Ohio App.3d 555, (2005); *Brokamp v. Mercy Hosp. Anderson*, 132 Ohio App.3d 850, 869-870 (1999).

The same is true under federal law. *O'Brien v. Ed Donnelly Enters., Inc.*, 2006 WL 2583327, * 3 (S.D.Ohio) ("In general, a court may not allow an inference that a party destroyed evidence that is in its control, unless the party did so in bad faith."); *see also Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir.1986) (two conditions precedent are destruction of evidence and bad faith); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir.1985); *Valentino v. United States Postal Serv.*, 674 F.2d 56, 73 n. 31 (D.C.Cir.1982); *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975) (bad faith, not merely negligence, must be manifested under the circumstances).[6]

Although I decline to give an adverse inference instruction, CSX may question Munns as to the whereabouts of his time books to inform the jury that Munns no longer has them. It is up to the

---

[6] Regardless of whether I rely on state or federal law, it "does not alter the outcome of this case." Thus, I see no need to decide this whether state or federal law controls. *O'Brien*, *supra*, *Inc.*, 2006 WL 2583327, at * 3; *see Joostberns v. United Parcel Servs., Inc.* 166 Fed.Appx. 783, 796 (6th Cir. 2006) (unpublished disposition) ("Regardless of the decisional law, state or federal, this panel finds that the district court did not err in disregarding Plaintiff's allegations of spoliation.").

jury to decide the effect of the missing time books and how much weight should be assigned to the fact that they are no longer available.

## II. Plaintiff's Motion

Plaintiff has submitted a single multi-part motion seeking exclusion of various items. [Doc. 69].

### A. Prior Accidents or Conditions

Plaintiff contends that any evidence about prior accidents or back injuries or treatment would be irrelevant. I disagree: if plaintiff has had or has reported or sought treatment for back problems, that may be relevant to his present claim. Whether it is or not depends on what such evidence might be. If defendant intends to offer any such evidence, it shall notify the plaintiff and court at least twenty-four hours prior to offering it so that any disputed issues may be resolved in the absence of the jury.

### B. Disability Benefits

Defendant disavows any intent to offer proof of plaintiff's receipt of Railroad Retirement Board benefits unless plaintiff "opens the door." I assume plaintiff will not; if defendant believes he has, I will deal with this issue then.

### C. When Plaintiff Hired Counsel

Plaintiff contends that when he hired an attorney [whether current or other counsel] is not relevant. Defendant contends that the date of consultation with or hiring of counsel may be relevant with regard to two issues: 1) whether plaintiff brought this suit within the applicable limitations period; and 2) what may have happened to his logbooks for 2000-05.

I agree with regard to the issue of whether plaintiff was aware of his cause of action outside the limitations period.

With regard to the logbooks, I am less persuaded of the relevance of such date. The mere fact of meeting with an attorney about one's legal rights and possible remedies, or otherwise with relevance to plaintiff's claim does not necessarily mean that counsel was aware of these records. This is so even if they were still in plaintiff's possession at that time. If, though, it appears that consultation preceded the discarding of the logbooks, I may permit some further inquiry into whether any bad faith was involved in their destruction.

No ruling shall, in any event, be made on these issues at this time. If raised again, the issues will be adjudicated, at least initially, outside the jury's presence.

### D. Testimony of Previously Undisclosed Witnesses

In view of defendant's representation that it has disclosed all anticipated witnesses to the plaintiff, this aspect of plaintiff's motion is moot.

Defendant reserves the right to call a previously undisclosed witness on rebuttal. When and if that occurs, the parties shall be heard outside the presence of the jury before the witness comes to the stand.

### E. Mitigation of Damages

Plaintiff seeks to preclude any and all evidence of a failure to mitigate. He points out that such failure is an affirmative defense.

That doesn't matter. If the defendant has proof that is relevant and otherwise admissible on the issue of a lack of mitigation, it may offer such evidence.

I will rule on the admissibility of such evidence outside the presence of the jury if and when the defendant proffers such evidence.

### F. Whether Witnesses Still Work for the Defendant

Plaintiff seeks to preclude information about whether its witnesses still work for the defendant. Defendant responds that whether such witness works or once worked the defendant can be relevant on the issue of bias and credibility. I agree that this often is so.

Defendant also points out that plaintiff has provided no case law supporting his request, which is, in my experience, unique.

Without precluding other grounds for objecting to such testimony, this aspect of plaintiff's motion shall be overruled.

### G. Proof of Contributory Fault

Plaintiff claims that defendant appears to have no evidence of contributory fault. That remains to be seen. Defendant suggests that it will contend that plaintiff could have asked for a replacement locomotive if he believed one to which he was assigned was unsafe.

This aspect of plaintiff's motion – to the extent that it seeks to exclude any and all evidence of his fault – shall be denied. Otherwise I will rule on objections as they arise at trial.

### H. Financial or Pecuniary Circumstances of the Plaintiff

Defendant eschews offering any such evidence. Overruled as moot, without prejudice.

### I. Secondary Gain Motivation

Plaintiff seeks exclusion of any evidence that persons involved in litigation complain of injury for longer periods than those not so engaged. Defendant states it will offer no such evidence. Overruled as moot.

14

**Conclusion**

It is, therefore,

ORDERED THAT the rulings on motions in limine be, and the same hereby are made as set forth herein.

So ordered.

>   s/James G. Carr
>   James G. Carr
>   Chief Judge