IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald Lee Munns,                                                    Case No. 3:07CV2507

           Plaintiff

     v.                                                                            ORDER

CSX Transportation, Inc.,

           Defendant

     This is an FELA case in which, following a jury verdict for the defendant railroad, the plaintiff has filed a motion for a new trial under Fed. R. Civ. P. 59(a). [Doc. 142]. For the reasons that follow, the motion shall be denied.[1]

     A motion for a new trial under Rule 59(a) may be granted "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion . . . ." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). The plaintiff's motion raises issues of unfairness, primarily with regard to pretrial rulings on motions *in limine* and jury instructions.

     The plaintiff, a brakeman/conductor, contends that my pretrial ruling that his claim that his injuries were caused, in part at least, by the ballast on which he had to walk was preempted by the FRSA's track safety standards. That ruling was based on the Sixth Circuit's decision shortly before the trial date in *Nickels v. Grand Trunk Western R.R.*, 560 F.3d 426 (6th Cir. 2009). I find no merit

---

[1] The railroad has also filed a bill of costs [Doc. 143], which plaintiff does not oppose. That bill shall be approved.

to plaintiff's contention that the kind of ballast on which he had to walk was outside the scope of that ruling.

Plaintiff stated he was given no time to react to my ruling. One reason for that fact is that plaintiff did not ask for a continuance. I can't give what isn't asked for.

Plaintiff challenges my pretrial summary judgment ruling precluding him from arguing that he was subjected to inadequate locomotive maintenance, worn locomotive suspensions, or defective track sections on which slow orders had been issued. I based that ruling on lack of evidence. Conclusory assertions of the sort made by plaintiff are not a substitute for evidence.

Plaintiff contended that issuance of "slow orders" at various times for various track segments constituted evidence of defective track. This contention is unavailing: Track Safety Standards expressly under the FRSA permit train operations on slow-ordered track. No liability can ensue in such circumstances. *See CSX Transp., Inc. v. Miller*, 858 A.2d 1025, 1048 (Md. App. 2004) ("If a railroad . . . has done everything that it is enjoined to do by . . . the Federal Railroad Safety Act, passed in 1970, the railroad may not be held liable in a FELA suit for conduct which the more specific federal act has expressly and specifically deemed to be acceptable.")

Plaintiff objects to my pretrial ruling that his FELA claim regarding locomotive seat design and equipment was precluded by the LIA. Under the Supreme Court's decision in *Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 613 (1926), The LIA "occup[ies] the entire field of regulating locomotive equipment, preempting state-law claims." Such preemption encompassed the "design, the construction, and the material of *every part of the locomotive* and tender *and of all appurtenances.*" *Id*. at 613 (emphasis added).

State tort or other law may not impose liability on a railroad for failure to install locomotive equipment if it is "within the scope of the authority of the [Secretary of Transportation]" to prescribe the same equipment, even if the Secretary has not already prescribed a rule or made any other requirement inconsistent with the state legislation. *Id*. Likewise, in light of *Nickels, supra*, plaintiff's effort to assert an FELA-based bad seat design claim is preempted. Such regulation is within the purview of the Secretary of Transportation under the LIA, which occupies the entire field of locomotive equipment and design.[2]

Plaintiff contends I improperly kept him from reading deposition testimony of Larry Biess, or cross-examining him on the issue of seat selection. He claims that "safety of the employees" was the reason for installing "air suspension seats" on CSXT locomotives.

Reading deposition testimony was unnecessary, as the witness testified at trial. Except for offering such testimony as an inconsistent statement, a witness's out-of-court statements, including those made during a deposition, are hearsay if offered for the truth of the matter asserted. Fed. R. Evid. 801(c); (d)(1)(A); *Netterville v. Missouri,* 800 F.2d 798, 801 (8th Cir. 1986) (deposition and direct testimony offered to prove the truth of the matter asserted were hearsay).

Plaintiff's description of the seat was inaccurate: as Biess stated, the seat being discussed was not an "Air Ride suspension" seat, as plaintiff's counsel suggested. Instead, the seat being referenced had a cylinder that helped raise it from a lower to a higher position. I perceive no error in my ruling, and certainly none that constitutes an abuse of my rather broad discretion over the admission of evidence.

---

[2] Plaintiff also argues that I improperly precluded his expert, Tyler Kress, from testifying to the risk factors associated with "poorly designed" seats. Because plaintiff's seat design claim was precluded, not allowing this testimony was proper.

Plaintiff contends that the prejudice from my rulings was amplified by the fact that his lawyer had not anticipated those rulings when developing his medical evidence and obtaining testimony from his treating physicians. According to plaintiff, had his attorney been aware of my rulings, he would have conducted his medical depositions differently.

That may be so, though plaintiff points to nothing that his attorney would have done differently had the rulings come before the depositions. The time to raise this contention was, in any event, in response to the motions once they were filed. The sequence of events, moreover, while not optimum, is not uncommon. Indeed, whenever parties procure evidence depositions, there is always some risk that something will happen before or during trial that was not anticipated that has an effect on the aptness, at least, as here [according to plaintiff] in part of the prerecorded testimony.

Nothing in the sequence or circumstance justifies a new trial.

Plaintiff next contends that I improperly precluded his witness Tyler Kress from testifying about ergonomic "risk factors" for development of musculoskeletal disorders associated with throwing switches and getting on and off moving equipment.[3] Plaintiff never alleged, either in his complaint or during his trial testimony that throwing switches or getting on and off moving equipment caused or aggravated the physical effects from defective locomotive seats.

Turning to jury instructions – to which plaintiff's counsel acknowledged his agreement, according to my recollection of the record – plaintiff contends that I improperly gave a charge on contributory negligence. In light of plaintiff's failure to follow proper CSXT reporting procedures and policies related to defective equipment, such instruction was not improper. Even if it were, the

---

[3] The railroad represents in its opposition to plaintiff's new trial motion that it "has no recollection of the Court limiting Kress's testimony in this regard." Nor do I, and plaintiff does not cite where the trial transcript shows such limitation.

jury never reached that issue, as it found for the railroad on the preliminary question of its liability

.		The plaintiff protests my giving of mitigation evidence. The evidence supported that charge. Plaintiff's doctor indicated that plaintiff could have resumed his work as a conductor without risk of injury.

The doctor treating plaintiff for pain management likewise testified that plaintiff was employable and could attempt to return to work in a sedentary desk-type position. The railroad presented evidence that plaintiff was certified to do such work as a car retarder operator, and that his seniority made him eligible to such position. Plaintiff testified, in any event, that he did not try to return to work because he did not "care" whether he could hold such a job and had no intention returning to work in such a position. On this basis alone, an instruction regarding mitigation was entirely appropriate.

This is so, despite plaintiff's contention that his need to take the pain reliever Vicodin precluded him, in light of the railroad's drug policy, from working. Though plaintiff may have preferred this medication, his pain management doctor testified only that plaintiff would need some type of pain medication – not any particular medication.

The railroad's drug policy, moreover, provides simply that employees cannot use "any drug, medication, or other substance, including prescribed medication that will in any way adversely affect the employees' alertness, coordination, reaction, response, or safety." Plaintiff testified that Vicodin did not affect his ability to think clearly.

In any event, as with the charge on contributory negligence, any error in giving the jury a charge on mitigation had no effect on the outcome, as the jury found for the railroad on liability. That being so, they did not consider damages.

Plaintiff claims that I should not have allowed the railroad's medical expert to testify to genetic and hereditary factors contributing to plaintiff's back condition. Plaintiff also asserts that I should not have allowed the witness to tell the jury about "twins studies."[4]

The witness testified that plaintiff's MRIs and x-rays revealed developmental changes, denominated "ringed apophysis changes" in his spine. He also stated that such changes were genetic in origin and accelerate disc degeneration. The witness based this testimony on review of the films and his specialized knowledge. In light of the nature of plaintiff's complaints about his injury, this testimony was relevant, material and otherwise admissible.

## Conclusion

Plaintiff's motion fails to show grounds for a new trial.

It is, therefore,

ORDERED THAT:

1. Plaintiff's motion for a new trial [Doc. 142] be, and the same hereby is denied;

2. Defendant's bill of costs [Doc. 143] be, and the same hereby is approved.

So ordered.

    s/James G. Carr
    James G. Carr
    Chief Judge

---

[4] Such studies, according to the witness, show a correlation between smoking and disc degeneration. Plaintiff was a smoker. Testimony about the effect of that habit on plaintiff's physical condition was relevant.